IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2002

## STATE OF TENNESSEE v. JAMES M. POWERS

**Appeal from the Criminal Court for Campbell County**
**No. 10354     E. Shayne Sexton, Judge**

---

**No. E2001-02363-CCA-R3-CD**
**October 23, 2002**

---

The Defendant, James M. Powers, appeals as of right from his convictions by a jury of four counts of rape of a child, a Class A felony. After a sentencing hearing, the trial court imposed a sentence of twenty years on each of the four counts and ordered that three of the sentences run consecutively, for an effective sentence of sixty years to be served in the Tennessee Department of Correction. The Defendant argues two issues on appeal: (1) that the evidence presented at trial was insufficient to support his four convictions of child rape, and (2) that the trial court erred by imposing consecutive sentences. We affirm the Defendant's convictions. We reverse the trial court's order that the sentences be served consecutively and remand for the entry of an order reflecting concurrent sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed in Part;**
**Reversed in Part; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Charles Herman, Assistant Public Defender, Jacksboro, Tennessee, for the appellant, James M. Powers.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William Paul Phillips, District Attorney General; and Michael O. Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant, James M. Powers, was convicted by a jury of four counts of rape of a child. Following a sentencing hearing, the Defendant received a sentence of twenty years as a Range I standard offender for each of the four counts. The trial court ordered that three of the sentences be served consecutively, for an effective sentence of sixty years. The Defendant appeals as of right,

asserting that the evidence was insufficient to support his four convictions of child rape and that the trial court erred by ordering three of the sentences to be served consecutively. We affirm the Defendant's convictions. We reverse the trial court's determination that the sentences should be served consecutively and remand for the entry of an order consistent with this opinion.

In August of 1999, eleven-year-old A.M.[1], the victim in this case, resided in a small mobile-home community in Campbell County, Tennessee, with his mother, grandmother, aunt, and brother. The Defendant also lived in the community at that time, very close to the home in which A.M. and his family lived. The Defendant and A.M.'s mother are first cousins. A.M. often played with his cousins, who were close to his age and who lived in the Defendant's mobile-home. It was not unusual for A.M. to spend time in the Defendant's residence, playing with his cousins and watching movies. A.M. testified that on one occasion, he was in the Defendant's residence, wrestling with his cousins and the Defendant. Although his cousins eventually left to do other things, A.M. did not notice their departure, and he continued to wrestle with the Defendant. During the course of the wrestling, the Defendant touched A.M.'s penis. A.M. testified that the Defendant "touched me down there and then I told him to stop and put my foot in his stomach and I pushed and he let go." A.M. did not tell his mother about this episode because he thought he "did something wrong" and was "scared" that he would be taken away from his mother.[2]

A.M. testified that "about a week later," the Defendant touched him again. He was at the Defendant's residence with his cousins watching a movie. The cousins left at some point, and A.M. was alone with the Defendant on the couch watching the movie. While they were watching the movie, the Defendant "scooted over" from the opposite side of the couch. A.M. then "scooted over just a little bit more" away from the Defendant. The Defendant again moved closer to A.M. The Defendant then put his hands down A.M.'s pants, took out A.M.'s penis, and performed fellatio on him. A.M. testified that, without saying anything, the Defendant "put his hands down my pants and pulled it out. He took it out of my pants and then he put his mouth on me." A.M. "[t]old him to stop," and when A.M. "got up and left," the Defendant stopped touching him. A.M. then went home, but he did not tell anyone about what had happened because he "was scared."

A.M. testified that "two or three days later," A.M. was planning to go to a friend's house with one of his relatives named Scottie. The Defendant was going to give them a ride. However, Scottie ultimately did not go along. The Defendant proceeded to take A.M. to the friend's house. Instead of going directly to the house, the Defendant took A.M. to a dead-end road. A.M. testified that he asked the Defendant why they were not going to the house, but he could not remember what the Defendant said. At the dead-end, the Defendant took A.M.'s penis out of his pants and again performed oral sex on A.M. When asked if he said anything to the Defendant, A.M. replied, "Stop.

---

[1] We will identify the minor victim in this case by his initials.

[2] The Defendant was indicted for a fifth count of child rape arising from this conduct, but the trial court dismissed this count upon motion by the Defendant at the close of the State's proof.

I didn't say nothing else. I didn't think of anything. I couldn't think of anything to say to him to get him to stop."

A few days later, A.M. went to the Defendant's residence to play and watch movies with his cousins. Other people were in the home when A.M. arrived. However, A.M. was left alone with the Defendant when the others went to bed. While they were on the couch in the living room watching a movie, the Defendant again pulled A.M.'s penis from his pants and performed fellatio on him. A.M. did not tell anyone what happened because he "was afraid [he would] get took from [his] mother."

The last incident occurred when A.M. again went to the Defendant's residence to play with his cousins. He and his cousins were in the residence playing with trucks, and his cousins went outside to play. A.M. remained in the home playing with the trucks. While they were alone, the Defendant again took A.M.'s penis from his pants and performed oral sex on him.

Approximately a week after the last occurrence, A.M. told his mother about what the Defendant had been doing to him. The two of them went for a drive, and she asked him what had happened with the Defendant. A.M.'s mother testified that she first became concerned about the Defendant and her son when she learned that the Defendant was buying tobacco for her son. A.M. told her that he had been doing yard work for the Defendant, and all the boys in the area dipped snuff. Some time later, the Defendant came to the mobile home where A.M.'s mother lived and asked to see her. She testified that the Defendant told her, "I don't like you calling me a child molester." She was surprised because she had never accused the Defendant of being a child molester. The Defendant said that A.M. had told him about his mother asking about the snuff. A.M.'s mother replied that she had just been curious about the work that A.M. had been doing. The Defendant then said, "Well, I ain't no child molester." She testified that after the Defendant calmed down, he told her, "I got to tell you the truth, I did you know . . . me and [A.M.], we had did something." She asked him what they had done, and testified that he responded "that he had sucked my son's dick." She then took A.M. for a drive and asked him about it, and he confirmed what the Defendant told her and that it had all started with the incident which occurred while wrestling.

The Defendant argues that the evidence is insufficient to support four convictions for child rape. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a).[3] The Defendant argues that the evidence is insufficient to prove that he had any sexual contact with the victim. We disagree. A.M. testified to each of the four incidents which gave rise to the Defendant's convictions. A.M. testified that each time, the Defendant took A.M.'s penis from his pants and performed fellatio on him. A.M.'s mother testified that the Defendant came to her home and admitted to her that he had performed oral sex on her eleven-year-old son.

The Defendant urges us to find the testimony of A.M. and his mother not credible. He states in his brief that "it seems irrational and incredible that [the victim] would continually go to the trailer after the abuse initially started in August of 1999." The Defendant further states in his brief, "Even more incredible was [A.M.'s mother's] testimony concerning appellant's alleged statement to her that he had sucked [A.M.'s] penis. The appellant adamantly denied the accusations, and it does not stand to reason that after confronting [her] about the allegations, he would then tell the child's own mother that he had committed such an act."

The crux of Defendant's challenge to the sufficiency of the evidence is that the testimony of the State's witnesses was not credible and therefore cannot support the convictions. Such an argument must fail. We reiterate that all questions involving the credibility of witnesses are to be resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000). Furthermore, evidence is sufficient if, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). Based on the testimony of A.M. and his mother, a rational juror clearly could have found beyond a reasonable doubt that the Defendant committed, on four separate and distinct occasions, an unlawful

---

[3]Sexual penetration is defined in our criminal code as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

sexual penetration of the victim, A.M., when A.M. was less than thirteen years old. Therefore, this issue is without merit.

The Defendant's second issue on appeal is whether the trial court erred by ordering three of the sentences for child rape to be served consecutively. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the sentencing hearing, the trial court imposed consecutive sentences pursuant to the following:

> The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> . . .
>
> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5). In ordering three of the Defendant's four sentences to run consecutively, the trial judge considered the mental damage inflicted upon A.M. by the Defendant. A.M.'s mother testified that A.M.'s grades have suffered as a result of the rapes. She described A.M. as "depressed and afraid." A.M. sees a therapist once a week and takes Paxil for his depression. Furthermore, his mother testified that A.M. still has bad dreams and "throws up." The trial judge stated, "It's very clear to me that this child is in for a long, long period of rehabilitation because of [the Defendant's] acts." The trial court also considered the relationship between the Defendant and the victim when deciding to order consecutive sentences. The court characterized the relationship as "neighborly," but we note that the Defendant is actually A.M.'s first cousin, once removed. The trial court gave consideration to "the way that the defendant carried out these particular crimes, by endearing himself to the family and holding himself out to be close to the [victim] and to the family." The court then ordered that three of the Defendant's four twenty-year sentences run consecutively.

Obviously, our law recognizes that rape of a child is a most serious offense. Our legislature has classified rape of a child as a Class A felony. See Tenn. Code Ann. § 39-13-522(b). A child rapist must serve the entire sentence — one hundred percent — undiminished by any sentence reduction credits. See Tenn. Code Ann. § 39-13-523(b). Even though the conduct of the Defendant was reprehensible, and while not discounting the seriousness of crimes of this nature, we believe the circumstances in this case militate against the application of Tennessee Code Annotated section 40-35-115(b)(5). There was no significant time span of undetected sexual activity and the nature of the criminal conduct was not aggravated beyond what is inherent in sex crimes committed against children.[4] We note that this Court has held that consecutive sentencing was unsupported by the evidence where the illegal sexual conduct occurred over a two-month period and the defendant was the victim's father. See State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995).

We have not disregarded the trauma suffered by A.M., but given all the circumstances presented in this case, concurrent sentences of twenty years for the child rape convictions are appropriate in relation to the severity of the offenses and are the least severe measures necessary to deter the defendant's future criminal conduct, to protect society, and to deter others who are similarly situated and may be likely to commit similar offenses. See Tenn. Code Ann. §§ 40-35-102 and 103.

Therefore, we modify the sentences to reflect that they be served concurrently, and remand to the trial court for entry of an order consistent with this opinion. In all other respects, the judgment is affirmed.

_____
DAVID H. WELLES, JUDGE

---

[4]We do not imply that all of the aggravating circumstances listed at Tennessee Code Annotated section 40-35-115(b)(5) must be present to support the imposition of consecutive sentencing.